# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Pamela Bateman-Chasse as Administrator of the ESTATE OF MARLENE BATEMAN<br><br>    Plaintiff<br><br>v.<br><br>SIGCO, LLC; and<br>CARY MCKAY<br><br>    Defendants | Civil Action No. 1:20-cv-00622<br><br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff, Pamela Bateman-Chasse as Administrator of the ESTATE OF MARLENE BATEMAN ("Plaintiff"), by and through her undersigned attorneys, hereby brings this Complaint for damages against Defendants SIGCO, LLC and CARY MCKAY, and alleges the following:

## PARTIES

1.  Plaintiff Pamela Bateman-Chasse as Administrator of the ESTATE OF MARLENE BATEMAN at all times relevant herein resided at 217 Rochester Road, Northwood, NH 03261.

2.  Defendant SIGCO, LLC is a Delaware Corporation with its principal place of business located at 48 Spiller Drive, Westbrook, ME 04092.

3.  Defendant CARY MCKAY at all times relevant herein resided at 245 New Portland Road, Gorham, ME 04038.

## JURISDICTION AND VENUE

4.  Federal diversity in this Court is proper under 28 U.S.C. § 1332 because Plaintiff is a citizen of New Hampshire, a different state than Defendant SIGCO, LLC's place of incorporation (Delaware) and headquarters (Maine), and a different state than Defendant Cary

McKay's place of residence (Maine) and the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper within this District because the events giving rise to this action happened in or are closely related to this District.

## JURY TRIAL DEMANDED

**6.** Plaintiff demands a trial by jury on each of the causes of action pleaded herein.

## FACTS AND ALLEGATIONS

7. On Friday December 6, 2019 at approximately 6:30 a.m. MARLENE BATEMAN was killed after the car she was driving on Route 4 collided with a box truck that was almost perpendicular across both lanes of travel as it was attempting to back into a business.

8. DEFENDANT CARY MCKAY was operating DEFENDANT SIGCO, LLC's 2016 Western Star box truck as its agent and/or employee to deliver glass to Exeter Glass in Northwood, NH. DEFENDANT CARY MCKAY was traveling westbound when he approached Exeter Glass, which was on the southern (left) side of the roadway. DEFENDANT CARY MCKAY chose not to take a left hand turn into Exeter Glass. Instead, he came to a stop in the middle of Route 4's westbound lane and attempted to back up into Exeter Glass's driveway while it was still dark outside.

9. DEFENDANT CARY MCKAY'S back-up maneuver required him to cross the double-yellow line, use both shoulders, and block both lanes of travel until his truck was perpendicular to traffic and able to back straight into Exeter Glass. MARLENE BATEMAN's 1999 Ford Taurus was also traveling westbound. MARLENE BATEMAN'S Ford Taurus crashed into the passenger side of the truck mid-maneuver when it was almost perpendicular in the roadway but still reversing in her direction.

10. MARLENE BATEMAN was pronounced dead on the scene. Defendant CARY MCKAY suffered no injuries.

11. There was an unidentified passenger in DEFENDANTS' truck who, upon information and belief, remained in the passenger seat throughout the Defendants' delivery attempt at issue and was also not injured.

12. This was the fifth fatality along Route 4 in Chichester, Epsom, and Northwood over the prior three years. The road is notorious for accidents– 63 of them in 2018 – because of blind spots, merging lanes, passing lanes, and highway-like speeds in the midst of rows of business and houses that have curb cuts. Defendants knew or should have known of the unique and significant dangers associated with Route 4, including this particular stretch of Route 4.

13. Doreen Colpritt, an employee of Northwood Garage said of this stretch of Route 4: "I've been here forever, in the area forever, and it's definitely gotten way worse over the years."

14. To complete its delivery to Exeter Glass, DEFENDANTS did not need to come to a stop in the middle of the westbound lane of Route 4, one of the most dangerous stretches of roadway in the entire state of New Hampshire. DEFENDANTS did not need to back up across a double yellow line, over shoulders, and block both lanes of travel with the truck perpendicular to traffic. DEFENDANTS chose to complete its delivery to Exeter Glass in this needlessly dangerous manner because it was quick and convenient for DEFENDANTS.

15. DEFENDANTS's actions and inactions were driven by their desire to complete this and all other deliveries as soon as possible and in conscious disregard of the safety of others including Plaintiff's Decedent MARLENE BATEMAN. DEFENDANTS put profit and efficiency before safety.

16. There are many things that DEFENDANTS could and should have done but failed to do that would have reduced or eliminated the risks they chose to create.

17. New Hampshire's Commercial Driver's License Manual includes Section 2.2.4, titled "Backing Safely," which states in part:

    a. "Backing is always dangerous."

    b. "Avoid backing whenever you can."

    c. "Use a helper whenever you can."

    d. "Back and turn towards the driver's side. Back to the driver's side so that you can see better. Backing towards the right side is very dangerous because you can't see as well. Use driver-side backing –even if it means going around the block to put your vehicle in position. The added safety is worth it."

18. Related, RSA 265:94 is titled "Limitations on backing" and states in part:

    a. "The driver of a vehicle shall not back the same unless such movement can be made with safety and without interfering with other traffic. The driver of a vehicle shall not back the same upon any shoulder or roadway of any controlled access way."

19. Also related, RSA 265:24 is titled "Driving on roadways laned for traffic" and states in part:

    a. "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

20. DEFENDANTS knew or should have known that the truck could not be backed into Exeter Glass unless such a maneuver could be made with safety and without interfering with traffic. And even if such movement could be made with safety and without interfering with traffic, DEFENDANTS further knew or should have known that backing up is an option of last resort. Defendants further knew or should have known that crossing a double yellow line and/or driving upon any shoulder in the process adds even more risk, and that similarly such movements are only appropriate when the driver has first ascertained that they can be made with safety.

21. Here, the DEFENDANTS should have not backed up the truck across dangerous Route 4 and/or crossed double yellow lines and/or driven upon any shoulder in the process because these maneuvers could not have been done with safety and/or without interfering with traffic. There is no evidence that DEFENDANTS gave any consideration to any other method of delivery, including but not limited to simply taking a left-hand turn and pulling straight into Exeter Glass.

22. Moreover, there was a passenger in DEFENDANTS' truck who could and should have been used as a helper during this dangerous backing maneuver, yet he remained in the passenger compartment throughout the delivery attempt and was not properly utilized as a helper.

23. Not only did DEFENDANTS back up when it was not appropriate to do so – they also performed the maneuver incorrectly and in the most dangerous way possible. NH's CDL guidelines require driver-sided backing and describe passenger-sided backing as "very dangerous." Here, driver-sided backing would have required the DEFENDANTS to pass Exeter Glass and turn around so that it was positioned east-bound – as opposed to the westbound lane that it was already in as it approached Exeter Glass. NH's CDL guidelines specifically speak to this scenario and required the DEFENDANTS to "[u]se driver-side backing –**even if it means going around the block to put your vehicle in position. The added safety is worth it.**"

24. Nevertheless, DEFENDANTS "chose" to back and turn towards the passenger's side because it was the quickest and most convenient way for them to do so. DEFENDANTS chose this more dangerous approach in spite of its knowledge that it would be safer to pass Exeter Glass and put the box truck in an east-bound position so that it could back and turn towards the driver's side.

25. Section 2.5.2 is titled "Communicating Your Presence" and states in part:

   a. "Other drivers may not notice your vehicle even when it's in plain sight. To help prevent accidents let them know you're there."

   b. "If you stop on a two-lane road carrying traffic in both directions or on an undivided highway, place warning devices within 10 feet of the front or rear corners to mark the location of the vehicle and 100 feet behind and ahead of the vehicle, on the shoulder or in the lane you stopped in. See Figure 2.9"

26. Figure 2.9 is pasted below

530521.1

6



Figure 2.9

27. DEFENDANTS knew or should have known that other drivers may not notice their truck even if it was in plain sight. DEFENDANTS knew or should have known that they had a duty to communicate their presence to help prevent an accident from occurring. The risks associated with communicating their presence were even greater whereas DEFENDANTS chose to back up when it was not appropriate to do so, and in the most dangerous manner possible.

28. DEFENDANTS did in fact stop on a two-lane road carrying traffic in both directions, yet they did not place any type of warning devices anywhere.

29. DEFENDANTS knew or should have known that placing warning devices to communicate their presence would have reduced risk, but they chose not to do so because they at all times emphasized profit and efficiency over safety.

30. The passenger was also not utilized in any way to help communicate the presence of the box truck. Instead of making any effort to communicate their presence, DEFENDANTS hastily and recklessly performed their delivery in the quickest way possible.

31. Section 2.7.7 is titled "Space Needed to Cross or Enter Traffic" and states in part:

   a. "Before you start across a road, make sure you can get all the way across before traffic reaches you."

32. Clearly, DEFENDANTS could not and did not get all the way across both lanes of travel on dangerous Route 4 before traffic reached their truck. This is yet another reason why DEFENDANTS never should have attempted to perform their dangerous maneuver in the first place. This is especially true whereas DEFENDANTS completely failed to consider or implement any of the available safeguards related to performing such a maneuver, such as using a helper and/or communicating their presence.

33. Section 2.8.4 is titled "Always Have a Plan" and states in part:

   a. "You should always be looking for hazards."

   b. "You look for the hazards in order to have time to plan a way out of any emergency."

   c. "When you see a hazard, think about the emergencies that could develop and figure out what you would do."

   d. "Always be prepared to take action based on your plans."

34. Here, DEFENDANTS had no plan. DEFENDANTS simply desired to get in and out of Exeter Glass as quickly as possible without any consideration to the risks and the many ways in which their maneuver could go awry.

35. DEFENDANTS knew or should have known of the hazards associated with their decision to back up the truck towards the passenger's side, over a double yellow line, upon both shoulders, and across both lanes of travel until it was perpendicular across one of the most dangerous stretches of roadway in the entire state. DEFENDANTS knew or should have known that such hazards included the fact that an approaching vehicle may not notice the truck while it was performing this dangerous maneuver, even if the truck was in plain sight. Thus, DEFENDANTS knew or should have known there was a risk that a vehicle traveling in either lane of travel may collide with the truck mid-maneuver.

36. Yet, there is no evidence that DEFENDANTS did anything to plan for this risk of collision.

37. DEFENDANTS knew or should have known that their actions and inactions had created a precarious scenario whereby they had robbed themselves of the ability to respond in any way even if they were to have witnessed a vehicle approaching. DEFENDANTS chose to put themselves in this compromised position where the only thing they could do mid-maneuver was hope that the foreseeable did not happen before they completed their maneuver and exited the roadway. DEFENDANTS' decision to place its truck and approaching drivers like Plaintiff MARLENE BATEMAN in such a precarious position is only further aggravated by the fact that they chose to do it on the most dangerous stretch of roadway in New Hampshire.

38. DEFENDANTS chose to gamble with safety and leave the foreseeable risk of injury to mere chance, and Plaintiff MARLENE BATEMAN lost her life as a result.

**FIRST CAUSE OF ACTION: NEGLIGENCE V. DEFENDANT CARY MCKAY**

39. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

40. At all relevant times, DEFENDANT CARY MCKAY had a duty to exercise reasonable care while on a public roadway, to keep a proper lookout for other vehicles, to operate the truck at issue in a safe and prudent manner, to maintain proper control of the truck, and to otherwise obey the statutory and common law duties of the State of New Hampshire so that the persons on said roadway would not be injured or sustain damages.

41. Wholly unmindful and regardless of said duties, DEFENDANT CARY MCKAY negligently failed to exercise reasonable care, failed to keep a proper lookout for other vehicles, failed to operate the truck at issue in a safe and prudent manner, failed to maintain proper control of the truck, and failed to otherwise obey the statutory and common law duties of the State of New Hampshire, thereby causing the violent aforementioned collision resulting in the death of MARLENE BATEMAN.

42. As a direct, proximate, and foreseeable result of DEFENDANT CARY MCKAY'S negligence, DEFENDANT CARY MCKAY caused a collision with the vehicle being lawfully operated by MARLENE BATEMAN and killed her.

43. As a direct, proximate, and foreseeable result of DEFENDANT CARY MCKAY'S negligence, the ESTATE OF MARLENE BATEMAN suffered losses and damages including but not limited to her untimely and wrongful death, loss of enjoyment of life, excruciating pain and suffering, loss of income, loss of earning capacity and other economic benefits and damages.

44. As a direct, proximate, and foreseeable result of DEFENDANT CARY MCKAY'S negligence, the ESTATE OF MARLENE BATEMAN incurred reasonable expenses occasioned to her estate.

45. All within the jurisdictional limit of this Court, the ESTATE OF MARLENE BATEMAN claims damages for the mental and physical pain suffered, the reasonable expenses

occasioned to her estate by the injury, the loss of the probable duration of her life but for the injuries, the loss of her capacity to earn money during her probable working life and all other elements of damages that may be recovered under RSA 556:12 or otherwise.

## SECOND CAUSE OF ACTION: NEGLIGENCE V. DEFENDANT SIGCO, LLC

46. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

47. At all relevant times DEFENDANT CARY MCKAY was operating a vehicle owned by DEFENDANT SIGCO, LLC and/or was acting in the course of and within the scope of his employment with DEFENDANT SIGCO, LLC.  Therefore, DEFENDANT SIGCO, LLC is liable for the conduct of DEFENDANT CARY MCKAY and its consequences pursuant to the legal doctrine of *respondeat superior*.

48. At all relevant times DEFENDANT CARY MCKAY was acting as an agent of DEFENDANT SIGCO, LLC and within the scope of said agency and therefore DEFENDNANT SIGCO, LLC is liable for the conduct of DEFENDANT CARY MCKAY and its consequences pursuant to the legal doctrine of *respondeat superior*.

49. DEFENDANT SIGCO, LLC is liable for the negligence of DEFENDANT CARY MCKAY as set forth above and all of its direct, proximate, and foreseeable consequences.

50. As a direct, proximate, and foreseeable result of DEFENDANTS' negligence, the ESTATE OF MARLENE BATEMAN suffered losses and damages including but not limited to her untimely and wrongful death, loss of enjoyment of life, excruciating pain and suffering, loss of income, loss of earning capacity and other economic benefits and damages.

51. As a direct, proximate, and foreseeable result of DEFENDANTS' negligence, the ESTATE OF MARLENE BATEMAN incurred reasonable expenses occasioned to her estate.

52.	All within the jurisdictional limit of this Court, the ESTATE OF MARLENE BATEMAN claims damages for the mental and physical pain suffered, the reasonable expenses occasioned to her estate by the injury, the loss of the probable duration of her life but for the injuries, the loss of her capacity to earn money during her probable working life and all other elements of damages that may be recovered under RSA 556:12 or otherwise.

### THIRD CAUSE OF ACTION: ENHANCED COMPENSATORY DAMAGES

53.	Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this complaint.

54.	When an act is wanton, malicious or oppressive, the aggravating conduct giving rise to the damages warrants the imposition of enhanced compensatory damages.

55.	By the conduct alleged herein, Plaintiff is entitled to enhanced compensatory damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief and recovery against the Defendants:

A.	Compensatory damages to Plaintiffs for past, present, and future damages, including, but not limited to, pain and suffering, for severe and permanent personal injuries sustained by Plaintiffs, permanent impairment, mental pain and suffering, loss of enjoyment of life, shortened life expectancy, past and future health and medical care costs, wrongful death, together with interest and costs as provided by law;

B.	Enhanced compensatory damages;

C.	All ascertainable economic damages, including past and future loss of earnings and/or earning capacity;

D. Costs, pre-trial interest, and attorneys' fees; and

E. Such further relief as may be proper and just.

Dated:  05/22/2020         /s/ D. Michael Noonan_____
                                         D. Michael Noonan, #8214
                                         *Attorney for Plaintiff*
                                         mnoonan@shaheengordon.com
                                         Shaheen & Gordon, P.A.
                                         353 Central Avenue
                                         P.O.  Box 977
                                         Dover, NH  03821-0977
                                         (603) 749-5000